ELIZABETH A. STRANGE
Acting United States Attorney
MONICA EDELSTEIN
Assistant United States Attorney
Arizona State Bar No. 023098
Two Renaissance Square
40 N. Central Ave., Suite 1200
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: monica.edelstein@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-17-00680-PHX-GMS |
| Plaintiff, | **UNITED STATES' MOTION FOR DETENTION** |
| vs. | (Magistrate Judge Michelle H. Burns) |
| Yomtov Scott Menaged, | Detention Hearing: June 2, 2017 at 10:30am |
| Defendant. | |

Plaintiff United States of America hereby files this brief in support of the government's request for pretrial detention of defendant Yomtov Scott Menaged. The United States' motion is based on the attached memorandum of points and authorities, the declaration of HSI Special Agent Byron Anderton, attached herein as Exhibit A, and the files and records in this case. Excludable delay under 18 U.S.C. § 3161(h) may occur as a result of this motion or an order based thereon.

### **MEMORANDUM OF POINTS AND AUTHORITIES**

### I. **BACKGROUND AND PROCEDUAL HISTORY**

The United States' respectfully requests that the Court order Defendant Yomtov Scott Menaged ("Menaged") detained pending trial in this case. Menaged is a 40-year-old U.S. citizen, with strong offshore ties, who owns and operates real estate investment and furniture store businesses in and around the Phoenix metropolitan area. In and around 2014,

1  Menaged appeared on a television show called "Property Wars" that filmed in the area and
2  focused on individual investors, like Menaged, who purchased foreclosed properties in real
3  estate Trustee Sales and "flipped" those properties for a profit. Menaged also owns and
4  operates brick and mortar furniture stores that at various times operated under several names
5  including: Furniture King, Furniture and Electronic King, and American Furniture.
6  (Declaration of SA Byron Anderton, Exhibit A, ¶ 3). As part of operating these entities,
7  Menaged employed various individuals and opened countless bank accounts in the names
8  of his businesses. (Exhibit A, ¶ 11).

9      On or about May 16, 2017, a grand jury returned an indictment charging Menaged with two count of Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 371, Wire Fraud in violation of 18 U.S.C. § 1343, and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A. The charges in this case stem from an elaborate scheme orchestrated by Menaged where he and others who worked for him, opened fraudulent credit card accounts in the names of supposed retail store customers with Wells Fargo and Synchrony Bank. (Exhibit A, ¶ 5-9). In fact, the credit applications were for fictitious purchases and made in the names of recently deceased individuals using these individuals' accurate personal identification information including their names, social security numbers, addresses, telephone numbers, and in some cases, email addresses or other contact information. (Exhibit A, ¶ 7, 9). The victim Banks wired funds for these fictitious purchases into the merchant bank accounts for the various furniture retail stores and these funds ultimately made their way to Menaged and his associates. Menaged made some nominal payments toward the outstanding credit accounts at Wells Fargo Bank using cashiers' checks drawn on his personal accounts to conceal the fraud, but because there was no living individual associated with the accounts, the Banks ultimately closed the accounts at a loss. (Exhibit A, ¶ 17). The loss associated with the two bank fraud schemes exceeds $2 million.

26      Menaged should be detained because there is a preponderance of evidence that he poses a substantial risk of flight. Given the serious nature of the charges in this case, as well as the potential for a custodial sentence, Menaged has a substantial motivation to flee.

Further, Menaged has the means to flee the jurisdiction because he has access to significant amounts of cash, has previously moved and accessed cash through countless bank accounts in the names of his businesses, family members and acquaintances, and actively and frequently travels internationally. There is also clear and convincing evidence that Menaged is an economic danger to the community. Even after filing for bankruptcy and therefore coming within the jurisdiction of the U.S. Bankruptcy Court, Menaged did not stop defrauding Synchrony Bank. In fact, he intentionally began using nominee employees and acquaintances to continue his bank fraud scheme to make it appear that he was no longer operating the furniture locations at issue. Given these facts, there are no conditions or combination of conditions to ensure that Menaged does not flee nor are there any conditions that will sufficiently protect the public from additional crimes committed by Menaged.

## II. MENAGED SHOULD BE DETAINED AS A FLIGHT RISK AND ECONOMIC DANGER TO THE COMMUNITY

### A. Pretrial Detention Is Appropriate Where a Defendant Poses A Substantial Risk of Flight And Is A Danger to the Community

The Bail Reform Act of 1984 permits pretrial detention of a defendant where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e); David N. Adair, Jr., Federal Judicial Center, The Bail Reform Act of 1984, p. vii (3rd Ed. 2006). The Act mandates the release of a person pending trial unless the court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (quoting 18 U.S.C.§ 3142(e)); see also *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). Conversely stated, a district court should not order pretrial release unless it determines that a condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. Detention is appropriate where the government demonstrates either flight risk or danger to the community; it is not necessary to prove both. See *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a flight risk

need only be supported by a preponderance of the evidence. *Id.* at 1406.  The government must establish that the defendant is a danger to the community by clear and convincing evidence.  *Gebro*, 948 F.2d at 1121.

In determining whether release conditions exist that would reasonably assure a defendant's appearance, Section 3142(g) requires a district court to consider the following factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including—
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>
>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The weight to be afforded to each of these factors rests in the district court's discretion. *See United States v. Gentry*, 455 F.Supp.2d 1018, 1020 (D. AZ 2006) (*citing United States v. Hollender*, 162 F.Supp.2d 261, 264 (S.D.N.Y. 2001)).  Here, defendant Menaged poses both a substantial risk of flight and is an economic danger to the community.

### B. Menaged Poses a Risk of Flight

#### 1. Menaged has Strong Offshore Ties and has the Economic Means to Flee

Investigators determined that Menaged has used multiple names and social security numbers including at least six (6) variations of his true name and at least two (2) separate social security numbers, only one of which is his valid number. (Exhibit A, ¶4). In addition, Menaged has used multiple dates of birth in a further attempt to conceal his identity. (*Id.*). There is no other interpretation for this type of behavior other than Menaged's intent to defraud and conceal his involvement in business and other transactions.

The investigation determined that Menaged possesses a U.S. passport book and a separate U.S. passport card, *which was discovered on his person* at the time of his arrest, and has travelled internationally frequently over the last ten years including a trip in December 2015 that took place during the crimes alleged in the Indictment. (Exhibit A, ¶ 10). Menaged was also carrying approximately $2,500.00 in cash on his person, including roughly $1,400.00 in uncirculated $100 bills at the time of his arrest on May 24, 2017. (Exhibit A, ¶ 17). Menaged was arrested after he left his house presumably in route to his business as he had done consistently each day for several weeks before his arrest. It is logical to conclude that Menaged is always prepared to flee based on the fact that he carries large amounts of cash and his travel documents on his person each day.

Furthermore, Menaged has access and control over twenty-eight (28) different bank accounts that the investigation is aware of and has been party to transactions involving hundreds of millions of dollars. (Exhibit A, ¶ 11, 13-15). The investigation traced more than $6 million that Menaged has moved to friends and family to conceal his ownership and control over the funds, including wires to family members in Israel and Menaged's father who has strong ties to Israel. (Exhibit A, ¶ 15). The investigation further determined that Menaged has access to large amounts of cash and has conducted cash transactions both at local casinos and at banks. (Exhibit A, ¶ 17, 18). Simply stated, Menaged has access to cash both in accounts he may have control over and accounts controlled by his family and

acquaintances who have demonstrated that they will act on Menaged's behalf. Furthermore, it appears Menaged also carries credit cards in the names of other individuals that he can use to conceal that he is actually conducting the transactions. (Exhibit A, ¶ 16). More importantly, the full scope of Menaged's financial picture is largely unknown to the United States. Menaged himself boasted that he has offshore accounts and access to money that he can repatriate as he wishes. (Exhibit A, ¶ 14). In any event, if Menaged flees, he has international travel experience and both the financial ability and means to successfully escape prosecution rather than face trial and, if convicted, the certainty of a prison sentence.

**2. Prison Exposure Provides Menaged a Substantial Motive to Flee**

As the Court is aware, Menaged is named in a multi-count Indictment. The Ninth Circuit permits the district court to consider possible punishment as an incentive for a defendant to flee in assessing a defendant's risk of flight. *See United Sates v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, the potential punishment that Menaged is exposed to creates a strong incentive to flee. The maximum sentence for counts 1 and 12, conspiracy to commit bank fraud, is 5 years each; each of the 11 counts of wire fraud has a maximum of 30 years because the victims are financial institutions; and each of the 11 counts of aggravated identity theft, under Title 18 U.S.C. §1028A, result in mandatory 2 year sentences upon conviction that must run consecutive to any other sentence imposed. As such, on the ID theft counts alone, Menaged is potentially facing 22 years' incarceration consecutive to any other sentence imposed.

A conservative calculation of the likely Advisory Guideline Range as to the non-ID theft charges results in a Total Offense Level of 31 with an estimated Guideline Range for Category I of 108-135 months. An analysis of the applicable Guidelines demonstrates that the amount associated with the bank frauds is approximately $2,112,405.97. The Base Offense Level is 7 pursuant to U.S.S.G. §2B1.1(a)(1); 16 levels will be added due to a loss that is greater than $1.5 million but less than $3.5 million pursuant to U.S.S.G. §2B1.1(b)(1)(I). An additional 2 levels will be added because Menaged's scheme involved

sophisticated means pursuant to U.S.S.G. § 2B1.1(b) (10) (C). An additional 4 levels would be applied because Menaged was an organizer or leader of a criminal activity that involved five or more participants or *was otherwise extensive* pursuant to U.S.S.G. § 3B1.1(a). Lastly, evidence during the investigation indicates that Menaged engaged in obstruction by utilizing nominee names and individuals after he had filed personal bankruptcy to conceal his involvement in the later bank fraud schemes and, therefore, could receive a 2 level increase if the Court finds that he obstructed justice pursuant to U.S.S.G. § 3C1.1.

In *United States v. Moore*, a statutory rebuttable presumption was established that the defendant posed a flight risk because he faced charges for which a maximum sentence of ten years or more was prescribed under the Controlled Substance Act. 607 F.Supp. 489, 492 (N.D.C.A 1985). Although, in the current case, no such rebuttable presumption is established based upon the particular offenses charged, the reasons justifying the presumption are present. In *United States v. Bolero*, 604 F. Supp. 1028, 1033 (S.D. Fla. 1985), where the defendant was charged with money laundering-a financial crime- the judge noted that "the same factors which create an unusually high risk of flight in narcotics offenses and which form the basis for the statutory presumption [were] present." *Id*. "Thus, persons involved in money laundering, just as those involved in narcotics trafficking, have the resources and foreign contacts to escape to other countries to avoid prosecution." *Id*. Similarly, in this case, although no rebuttable presumption exists against Menaged's release pending trial, the same circumstances that underlie such a presumption in narcotics cases are present here - foreign ties and access to cash and other financial resources inside and outside the Country that are largely unknown to the Government.

**3. Regarding all Counts, the Evidence of Menaged's Guilt is Substantial**

The evidence of the bank fraud scheme is based largely on certified and verifiable documentation obtained from the victim Banks. The flow of funds to Menaged's bank accounts and his ultimate control of these funds is also established by certified bank records. (Exhibit A, ¶ 8-9). As such, the paper trail in this case leads directly to Menaged. All of the fraudulent credit applications were submitted electronically either from

Menaged's email account or through Synchrony Bank's online portal known as Business Center, establishing that the scheme was executed by wire fraud. Furthermore, the investigation has confirmed that in almost every instance that a credit application was submitted, the individual was deceased prior to the date of the application and therefore, could never have entered one of the furniture stores and made a purchase. (Exhibit A, ¶ 7, 9). Finally, the investigation has verified that all of the individuals listed on the fraudulent applications are in fact real individuals and that their stolen personal identification information used to submit the applications was 100% accurate. (Exhibit A, ¶ 8-9).

### C. Menaged is an Economic Danger to the Community

In addition to being a flight risk, Menaged should be detained pending trial to protect the public because there is clear and convincing evidence that he is an economic danger to the community. Danger to the community also encompasses economic danger. *United States v. Reynolds*, 956 F.2d 192, 192-93 (9th Cir. 1992) (defendant convicted of mail fraud under 18 U.S.C. § 1341 posed an economic or pecuniary danger to the community).

Menaged began the bank fraud scheme involving Wells Fargo Bank in or around 2015. He subsequently filed for bankruptcy in April 2016. (Exhibit A, ¶ 12). Despite being subject to the jurisdiction of the Bankruptcy Court, Menaged continued to perpetuate the same scheme involving Synchrony Bank but this time utilized nominees and employees to establish the merchant bank account relationships with the Bank. The evidence also establishes that Menaged had access to real and accurate bulk personal identification information. (Exhibit A, ¶ 7, 9). The entirety of the fraud, including the submission of the false applications and the money transfers, could have been executed from any computer terminal with an internet connection or even a smart phone. In addition, Menaged openly stated to associates that he would not disclose funds he held offshore to the Bankruptcy Court and that he had the means to access funds that he had not disclosed to the Court. (Exhibit A, ¶ 14). The evidence clearly establishes that Menaged will simply change his methods but continue to perpetuate economic frauds regardless of any order or conditions imposed by this or any other Court. He has proven his unwillingness to be truthful and

comply in the very recent past and there is no evidence that any conditions or combination of conditions would deter him even now. Menaged should be detained until the economic danger he poses to the community is ameliorated and the only way to ensure that is the case is to entirely prevent his access to the community.

### III. CONCLUSION

By a preponderance of the evidence, Menaged poses a flight risk. He appears to have access to substantial cash, bank accounts, and unknown assets outside of the United States. He is exposed to substantial prison time on charges for which the evidence of guilt is considerable. Menaged, therefore, has the motivation and means to flee the jurisdiction. Additionally, there is clear and convincing evidence that Menaged has been, and will continue to be, an economic danger to the community if allowed to remain outside of custody. Lastly, although the United States is not proposing that Menaged provide real property as collateral for a surety, any real property that he has access to is encumbered, or is subject to forfeiture, or seizure. Menaged should be detained pending trial.

Respectfully submitted this 31st day of May 2017.

ELIZABETH A. STRANGE
Acting United States Attorney

 *s/Monica Edelstein*
MONICA EDELSTEIN
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31th day of May 2017, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the CM/ECF registrants listed under this case number:

 *s/Gaynell Smith*
U.S. Attorney's Office